## ALONZO B. HOUGH *v.* JACOB PATRICK.

*Parties to real actions—Equitable interest and possession—Erection of dam—Overflowing of land, &c.*

A person, who has but an equitable interest, cannot generally sue at law, particularly in real actions, which are founded upon title; but where one has an equitable interest and is in the actual possession and occupancy of the premises, he may sustain a personal action for *injuries done to that possession,* against a wrong doer, or one who has not a better legal title or right of possession.

Actual possession is a good title against any one, who cannot show a better title.

And so where in 1835, the plaintiff went into possession of premises under a bond for a deed, and erected a house, and continued in possession till he finally took a deed of the premises; and the plaintiff's grantor in 1836, gave the defendant parol permission to erect a dam across a stream on the said grantor's land, which defendant erected and thereby injured the land of the plaintiff; in an action to recover damages for such injuries, *it was held,* that the parol permission to defendant, would create and give him but an equitable interest, which would be held subservient to the prior and superior equity of the plaintiff, and that the defendant had no right to interfere with, or disturb the plaintiff in the occupancy or possession of his premises; and that unless the defendant could establish a

legal right to the erection and continuance of the dam, and also the right to flow the premises in plaintiff's possession, the plaintiff would be entitled to recover damages sustained at any time within six years before the commencement of his suit.

The interest of a witness, created by a mortgage given to his wife, is removed by an assignment of the mortgage, and a delivery of the assignment will be presumed, if nothing appears in the case showing it otherwise; so too, where the witness holds an assignment of the judgment recovered in a former trial, the objection to his competency is removed by a re-assignment of the same.

This was an action on the case, for flowing the plaintiff's land by means of a dam.

The plaintiff declares that on the 18th day of October, 1835, he was seized of the premises, and from thence hitherto hath been seized and lawfully possessed of them.

That defendant, on the first day of October, 1836, erected, on land contiguous upon the east to the land of the plaintiff and across Jewell Brook, a dam, and hath ever since kept up and continued said dam, thereby stopping and obstructing the natural course of the waters of said brook, thereby causing the waters of said brook to overflow and drown the plaintiff's land, destroying the plaintiff's crops growing thereon of the value of —— and other damages ——. The writ was dated the 22d day of October, 1849, and served on the 16th day of November, 1849.

Plea, not guilty within six years, and trial by jury.

On the trial, it was conceded that one William B. Wetherbee owned the land described in the plaintiff's declaration, together with the lands adjoining, and gave the plaintiff a bond for a deed of the land described in the declaration, (the bond is dated October 28, 1835.)

The plaintiff offered testimony tending to prove, that immediately after the date of said bond, he entered into possession of said land and erected buildings thereon, and had by himself and tenants ever since occupied and possessed the same; that plaintiff gave to one Jonathan Carpenter a quit-claim deed, dated September 25, 1837 ; but that the same was only as security for debt and in trust, and that on the fifth day of February, 1839, said Wetherbee executed a deed of said land to said Carpenter, who held the title in trust for the plaintiff, and that said Carpenter, on the 19th day of July, 1839, executed a bond for a deed to plaintiff;

and that afterwards, on the 25th day of November, 1847, said Carpenter executed his deed of the premises to the plaintiff. (Copies of the said deeds and bonds were read in evidence, and put into the case.)

The plaintiff's testimony also tended to prove, that the next year after plaintiff received his bond from said Wetherbee, and entered upon said land, the defendant erected a dam on the stream running through said land, on the land of said Wetherbee, a few rods below the line of the plaintiff's land, and subsequently elevated the same, and continued and sustained the same up to the commencement of this suit, and that thereby the water of said stream has been flowed back in the channel of said stream over the plaintiff's land from time to time, thereby doing him great injury.

The defendant gave evidence tending to prove, that in 1835, he erected a blacksmith's shop on his land on said stream below the plaintiff's land, with a view to put in machinery to be propelled by the water of said stream; that in 1836, by permission of said Wetherbee the defendant erected a dam across said brook on the land of said Wetherbee, and that it set back the water in the bed of the brook only to the line, or a little over the line of the plaintiff's land, and that he never afterwards elevated it any higher, and that the same has never occasioned the water to flow on to the plaintiff's land; that said Wetherbee on the 22d day of June, 1847, executed to the defendant a deed of said privilege of keeping up said dam, which deed was read in evidence, and put into the case.

The defendant requested the court to charge the jury, that if the defendant erected the dam permanently on Wetherbee's land, and by his permission and before said Wetherbee deeded to said Carpenter in February, 1839, and that the defendant was then in the use and occupancy of said dam by said Wetherbee's permission, and continued so to use and occupy the same until the commencement of this suit, and that said Wetherbee deeded to the defendant said privilege in June, 1847, then the plaintiff cannot recover for any damage done by said dam as first erected.

The court,—COLLAMER, J., presiding,—declined so to charge the jury; but did charge the jury, that if they found the plaintiff rightfully took and held possession of said land from the time he took said bond from said Wetherbee, he would be entitled to re-

cover for any injury occasioned to his possession and enjoyment of said land, within six years next before the commencement of this action, by reason of said dam erected or elevated after the plaintiff so took possession.

To which charge and refusal of the court to charge as requested, the defendant excepted.

In the progress of the trial, the plaintiff offered one Calvin R. Sears, as a witness, to whom the defendant objected on the ground of interest, and gave in evidence a copy of a mortgage deed from the defendant to Lucretia M. Sears, wife of the said Calvin, dated June 19th, 1848, and also a notice, from said Sears to the defendant, dated October 16, 1851, that plaintiff had assigned to him, the said Sears all interest in this suit. The plaintiff admitted that he assigned the judgment in this suit, and which was set forth in said notice, immediately after the last verdict in said case.

The plaintiff to remove said objection of interest, gave 'in evidence a re-assignment of said judgment to the plaintiff, dated June 9, 1853, also an assignment of said mortgage, by said Sears and wife, to Calvin L. Gilbert, dated December 9, 1851.

The court admitted the said Sears to testify, to which decision of the court, the defendant excepted.

In the progress of the trial, the plaintiff also offered testimony to show damages occasioned to him, by the flow of water on said land by said dam, since the commencement of this action; to the admission of which the defendant objected, and the same was excluded by the court—to which decision of the court excluding this testimony the plaintiff excepted.

*S. Fullam* for defendant.

I. The defendant insists, that he was entitled to the charge as requested.

(1.) Because the flowing back of water in the channel does not give a right of action without special damages. *Cooper* v. *Hall*, 5 Ham. 320, cited 3 U. S. Dig. 645 § 77.

(2.) Wetherbee had the right while owner of the plaintiff's land to subject it to servitude of this kind, and it would be subject to the same while in the possession of his grantee, and the owner of the servient tenement cannot prevent such servitude, or deprive the owner of the dominant tenement from enjoying the benefit of

that servitude, whether the owner of the dominant tenement be Wetherbee or his grantee. *Nicholas* v. *Chamberlin*, Cro. Jac. 121. Gale & Whatley's Law of Easements 38 to 49. Angel on Water courses 57. *Story* v. *Odin*, 12 Mass. 157. *Grant* v. *Chase*, 12 Mass. 442.

(3.) The necessity of preserving such rights has been so apparent, that courts have held a period of enjoyment less than that required by the statute of limitations sufficient from which to presume a grant. *Record* v. *Williams*, 7 Wheat. 59. Angel on Water courses 68.

II. The court manifestly erred in charging the jury, that the plaintiff could recover for any injury occasioned to his possession and enjoyment of said land, by reason of said dam erected or elevated after the plaintiff took possession.

(1.) Because, there are numerous injuries occasioned by the erection of dams for which there is no redress ; for instance, the reasonable detention of water in a pond for the use of mills, although it may injure the mills below it has always been held to be an injury for which no action could be sustained. *Tyler et al.* v. *Wilkinson*, 4 Mason 401. *Mason et al.* v. *Brinkerhoff*, 17 Johns. 306. Angel on Wat. 15, 16 and 17.

(2.) Every owner of a stream of water, has a right to erect a dam on his own premises and flow the water back to the extent of his own land, and if this do no injury to the proprietors above, when water is at its ordinary pitch, such proprietors cannot recover for damages occasioned by the water flowing. 3 U. S. Dig. 640 § 4.

III. Calvin R. Sears was improperly admitted as a witness. The mortgage to his wife created an interest, which should have excluded him, and the assignment to Gilbert did not vary that interest, for there was no evidence that Gilbert ever accepted it, and it was in the hands of the plaintiff. A witness who would take an assignment of a judgment as Sears did in this case, and then sell it back to the plaintiff for the sake of testifying would readily assign a mortgage to a man in Georgia, and put it into plaintiff's hands for the same purpose.

*Washburn & Marsh* for plaintiff.

I. The defendant was not entitled to a charge in accordance with his first request.

(1.) Wetherbee, having in 1835, executed to the plaintiff a bond to convey, and deliver possession of the premises, could not give a license, by parol or otherwise, for the exercise of rights inconsistent with the plaintiff's enjoyment of the premises.

(2.) The plaintiff having taken possession of the premises in 1835, under the agreement for a deed from Wetherbee, and immediately erected buildings thereon, and continued in exclusive and adverse possession through the year 1836, and ever afterwards, the defendant must be charged with notice of the plaintiff's rights, derived from Wetherbee, and cannot assert any inconsistent rights, derived from the license which he received from Wetherbee in 1836. *Ripley* v. *Yale*, 18 Vt. 220.   19 Vt. 156.   *Pinney* v. *Fellows*, 15 Vt. 541.

But it sufficiently appears from the case, that the defendant when he obtained the license in 1836, had notice *in fact* of the plaintiff's rights ; for it is stated, that he gave evidence tending to prove that he so erected his dam, as to set back the water *only* to the plaintiff's line, or a little over, and that he never afterwards elevated the dam, and that the dam never did occasion the water to flow on to plaintiff's land.

But however the exceptions may be construed in this respect, this is a point in regard to which there never has been any controversy,—the notice to the defendant having been proved by the same testimony, which proved his license.

And the defendant can claim no paramount rights by reason of the erection of his shop, in 1835, "with a view to put in machinery to be propelled by the water of the stream."

(1.) It does not appear, that the erection was previous to the execution of the bond to the plaintiff, and the erection of the plaintiff's house, in 1835.

(2.) It does not appear, that the plaintiff had any notice of defendant's "*view to put in machinery.*"

(3.) It is not stated, what distance below the plaintiff's land the shop was erected; nor that the machinery, which the defendant had a "*view*".of placing therein, could only be propelled by erecting a dam sufficiently high, to flow the plaintiff's land.

And the fact is, that the shop was erected upon a dam, which

had existed many years, and which did not flow the water to within many rods of the plaintiff's land.

II. The plaintiff's right of recovery was limited by the charge, to the injury to his *possession and enjoyment of the land*; and as it appears, that he was rightfully *in possession*, during the six years to which his recovery was limited, and the declaration proceeds for an injury to his possession, no question can be raised as to the nature of his *title*.

III. There was no error in admitting the testimony of Sears.

(1.) Whatever interest he acquired by the assignment to him of the previous judgment was purged by his re-assignment to the plaintiff. *Edwards* v. *Golding*, 20 Vt. 40.

(2.) That his interest as husband of the mortgagee was purged by the assignment of the mortgage, to Calvin L. Gilbert, was decided by this court when this case was last before them.

(3.) And in any event the judgment should not be reversed for this cause, since the objection for interest is now abolished by statute.

The opinion of the court was delivered by

ISHAM, J. The plaintiff has brought this action for the erection and continuance of a dam across a stream of water, in Ludlow, which caused the overflowing of his land.

In relation to the interest and right of the plaintiff in the land overflowed, we learn that the premises were formerly owned by Mr. Wetherbee; that on the 28th of October, 1835, Mr. Wetherbee executed his bond to the plaintiff for the conveyance of the land to him, and that immediately thereafter, the plaintiff entered into the possession of the premises, erected buildings thereon, and has continued his occupation and possession of the premises ever since. The premises were afterwards conveyed by Mr. Wetherbee and the plaintiff, to Mr. Carpenter as security for a debt, and in trust for the plaintiff, and on the 25th of November, 1847, were conveyed by Mr. Carpenter to the plaintiff; thus vesting in him the legal as well as the equitable title to the land. From the 28th of October, 1835, when the bond was executed, to the 25th of November, 1847, when the deed to the plaintiff was given by Mr. Carpenter, the plaintiff had an equitable interest in the premises,

accompanied by the actual occupation and possession in his own right.

It is insisted that the plaintiff can sustain no action of this character against the defendant, for any injury during this period; and that the jury under the charge of the court, improperly estimated damages, sustained during a portion of that time, which arose from the erection of that dam.

As a general rule, an action must be brought in the name of the party whose legal right has been affected. A person who has but an equitable interest cannot generally sue at law, particularly in real actions, which are founded upon title. But where one is in the actual possession and occupancy of premises, he may sustain a personal action for *injuries done to that possession*, against a wrong doer, or one who has not a better legal title, or right of possession. Actual possession is a good title against any one who cannot show a better right. *Graham* v. *Peat*, 1 East. 244. 1 Chitty's Plead. 46. *Lambert* v. *Stroother*, Willis 221. *Hull* v. *Fuller*, 4 Vt. 199.

Unless the defendant, therefore, established a legal right, not only to the erection and continuance of the present dam, but the right also to flow the water upon the premises in the possession of the plaintiff, we think the court were justified in their charge to the jury, that the plaintiff's right to the premises was sufficient to entitle him to recover damages, which were sustained at any time within six years before the commencement of this action. *Hall* v. *Chaffee*, 13 Vt. 150.

In respect to the right of the defendant to erect a dam across this stream, we learn from the case, that on the 18th of August, 1835, Mr. Wetherbee conveyed certain premises to the defendant of which he is in possession, with the right of erecting a dam across that stream on the premises conveyed, of the same height a dam had formerly been erected. The defendant's buildings are erected upon those premises. This deed gave no right to the defendant to erect the present dam, as it was not erected upon those premises, but several rods above, and near the land of the plaintiff; indeed, the right to erect the present dam, and to flow back the water, is not claimed under this deed. The present dam was erected in 1836 upon the land of Mr. Wetherbee, and by his permission. That parol permission to erect this dam, gave the defendant no right to the land, or to flow the water upon the premises occu-

pied by the plaintiff. He was at law a mere occupant at will. Mr. Wetherbee or any one under him could have caused the dam to be removed at their pleasure, until the right was confirmed by Wetherbee's deed of June, 1847. *Cook* v. *Stearns,* 11 Mass. 533. *Hall* v. *Chaffee,* 13 Vt. 150. But giving to that parol permission, and the erection of the dam under it, its greatest effect, it would create but an equitable right in the defendant, which would be held subservient to the prior and superior equity of the plaintiff, and would give him no right to interfere with, or disturb the plaintiff in the occupancy or possession of his premises. In giving his permission to erect that dam, Mr. Wetherbee obviously did not intend to do any act in derogation of the right he had previously given to the plaintiff, and this must have been so understood by the defendant, for in his defense and in the evidence he introduced, it was insisted, that the dam occasioned the water to flow back only on the land of Mr. Wetherbee, and not on the land in the possession of the plaintiff. This intention and understanding of the parties is confirmed by their subsequent deed of June, 1847. If that deed was given in pursuance of that parol permission, we find, that while it confirms the right to erect and continue that dam, and gives the further right to construct an aqueduct from the dam to the defendant's shop, yet, the right to flow the water back, is expressly limited to the line of Alonzo B. Hough.

Whether, therefore, we look to the several deeds of Mr. Wetherbee to the defendant, of August 18, 1835, and of June 22, 1847, or to the parol permission granted in 1836, the defendant had no right to erect, or continue the erection of the dam, where it is now situated, so as to cause the water of that stream to flow upon the land of the plaintiff. The jury have found, that the dam was erected by the defendant, and that the plaintiff has sustained damages in consequence of its erection, and the flowing of the water back upon his premises. Upon those facts, the plaintiff is entitled to recover such damages as he has sustained from that cause, in being prevented or disturbed in the full enjoyment, and use of the premises in his possession.

The language of the court, in their charge to the jury, that the plaintiff was entitled to recover for *any injury* occasioned to his possession, &c., should be understood with reference to its context, and the facts appearing in the case. It has reference only to such

damages, as tending to prove which, testimony was introduced on the trial of the case. Under this construction of the charge, we see no matter for which the defendant has cause of exception.

The objection to the competency of Calvin R. Sears, as a witness was properly overruled. The mortgage given to his wife created an interest in the land, which by the marriage might vest in the husband, but at most it was contingent in its character, as the debt might have been satisfied without resorting to the mortgage security. But if he was interested in the event of the suit while they held that mortgage, its assignment to Calvin L. Gilbert removed the objection. The assignment was a valid transfer of the mortgage as against the witness and his wife, and will estop them from claiming the same, as against their deed of assignment. A delivery is presumed, as no fact is stated in the case showing it otherwise. The reassignment of the judgment removed the objection from that source. The assignment of the mortgage and the debt secured thereby to Gilbert, restored the competency of the witness, but they were all circumstances which could properly be taken into consideration as affecting the credibility of the witness.

The judgment of the County Court is affirmed.